IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JAMES SHELLEY and
PATRICIA SHELLEY                                                          PLAINTIFFS

VS.                                                              CASE NO. 4:05cv167

COLDWELL BANKER REAL ESTATE
CORPORATION, ET AL.                                                       DEFENDANTS

# ORDER

Defendant GMFS, LLC has filed a motion to compel alternative dispute resolution ("ADR") and to enjoin a parallel state court action pending in the Circuit Court of Leflore County. In support of this motion, defendant notes that, as part of a 2002 mortgage transaction, plaintiffs signed a document whereby they each agreed to mediate, and if necessary, arbitrate any claims which they might have against the mortgage broker/lender Mortgage Stop. Mortgage Stop later assigned the right to collect monies owed under the loan to GMFS, which (unlike Mortgage Stop) is a defendant in this action. Congress provided in the Federal Arbitration Act (FAA) that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The effect of this section is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In arguing that ADR should not be compelled, plaintiffs initially note that Mortgage Stop did not sign the ADR rider in question and that the rider should therefore be held unenforceable

against plaintiffs. While the court has not previously addressed this issue, it should be noted that two district judges in the Southern District of Mississippi have rejected nearly identical arguments. In *Raesley v. Grand Housing, Inc.*, 105 F.Supp.2d 562, 569 (S.D. Miss. 2000), Judge Lee concluded that "(t)he fact that the defendants did not sign the arbitration document and therefore cannot be compelled to arbitrate their disputes with plaintiffs does not prevent enforcement of the agreement against plaintiffs, who admittedly did sign the agreement." Judge Barbour similarly concluded in *Pridgen v. Green Tree Financial Servicing Corp., Inc.*, 88 F. Supp. 2d 655, 658 (S.D. Miss. 2000), that mutuality of obligation was not required for an arbitration clause to be enforceable, so long as the underlying contract was supported by consideration.

Most significantly for this court's purposes, the Mississippi Supreme Court subsequently agreed with Judge Lee and Judge Barbour's conclusions in this regard, holding that "(p)ursuant to Mississippi law, mutuality of obligation is not required for an arbitration agreement to be enforceable as long as there is consideration." *McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So.2d 446, 453 (Miss. 2004) (citing *Pridgen* and *Raesly*).[1] Having thus clearly established that mutuality of obligation is not required for arbitration agreements to be valid in this state, the court would nevertheless note that the ADR rider appears to bind both parties to the agreement. For example, the rider provides that the "agreement to mediate or arbitrate" applies to "all claims, counter-claims, disputes, legal controversies, and other matters in question arising

---

[1] The existence of the aforementioned Mississippi Supreme Court authority renders this case clearly distinguishable from *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 170 (5th Cir. 2004), wherein the Fifth Circuit found that Louisiana law required mutuality of obligations for arbitration provisions to be enforceable.

2

out of, or relating to, the extension of credit." The reference to "claims and cross-claims" would appear to cover claims raised by both parties, and the rider later provides that "borrower and lender" agree to various provisions in the agreement. It is true that the rider expressly excludes collection efforts by the lender, but this does not alter the fact that the rider binds Mortgage Stop and plaintiffs equally to various provisions. Moreover, like Judge Lee in *Raesly*, this court does not interpret the absence of a signature by Mortgage Stop as precluding the enforcement of the rider against it. This is particularly true considering that the rider was presumably drafted by Mortgage Stop and considering also that the rider is merely a part of a lending agreement which was clearly supported by consideration on the part of Mortgage Stop.

Plaintiffs do not dispute that they received the mortgage funds which they sought, and it is therefore clear that the loan agreement was supported by consideration on Mortgage Stop's part.[2] Plaintiffs agreed to arbitrate their disputes against Mortgage Stop in exchange for receiving these funds, and the court finds this agreement to be an enforceable one. The court further finds that plaintiffs sufficiently make allegations of "substantially interdependent and concerted misconduct" between Mortgage Stop and the assignee GMFS so as to entitle GMFS to enforce the arbitration agreement under relevant Fifth Circuit authority. *Grigson v. Creative Artists Agency*, 210 F.3d 524, 527 (5th Cir. 2000) (permitting non-signatory to enforce arbitration provision where plaintiff alleges concerted wrongdoing between signatory and non-signatory defendant). Indeed, plaintiffs allege that GMFS "allowed Mortgage Stop to masquerade as the lender in this transaction" and that GMFS and Mortgage Stop each participated in a RICO

---

[2]As noted *infra*, plaintiffs allege that Mortgage Stop merely served as broker in this case and that it "masqueraded" as a lender. Regardless of whether Mortgage Stop actually served as a lender or broker, it is clear that it assisted plaintiffs in obtaining the loans which they sought.

3

enterprise with full awareness that plaintiffs were being defrauded. In the court's view, such allegations clearly allege concerted wrongdoing between GMFS and Mortgage Stop.[3] Plaintiffs allege that this concerted wrongdoing constituted fraud, but, even accepting plaintiffs' allegations in this regard as true, this would not entitle plaintiffs to avoid the effect of the arbitration agreement which they signed, as explained *infra*.

Normally, doubts must be resolved in favor of arbitration, *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), but the "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties" or to "the determination of who is bound" by the arbitration agreement. *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 (5th Cir. 2002). Instead, this Court determines whether there is a valid agreement to arbitrate and who is bound by it based on "ordinary contract principles." *Id.* If the claim is fraud in the inducement of the arbitration clause itself-an issue which goes to the "making" of the agreement to arbitrate-the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally. *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

Plaintiffs do present evidence suggesting that the underlying loan transaction might have included fraudulent activity committed by unsavory characters. In the court's view, however,

---

[3]The court does not address whether plaintiffs sufficiently allege concerted wrongdoing among Mortgage Stop and any other defendants so as to entitle these non-signatory defendants to enforce the arbitration agreement executed by Mortgage Stop. The court presently has before it arguments in this regard raised solely by GMFS.

plaintiffs do not sufficiently raise allegations of fraud in the inducement of the arbitration agreement itself to permit the court to consider these claims. For example, there are no allegations of fraud in the inducement of the arbitration provision in this case which approach those in *American Heritage Life Ins. Co. v. Lang*, 321 F.3d 533 (5th Cir. 2003), which involved allegations that illiterate plaintiffs had been defrauded into signing arbitration agreements without their consent. *Lang* is one of the few Fifth Circuit decisions to reach the result urged by plaintiffs in this case. Indeed, this court would note that while its ruling denying arbitration in *Lang* was affirmed by the Fifth Circuit, this court's similar ruling denying arbitration in *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004) was reversed by the same court. In *Bailey*, the Fifth Circuit concluded that "the district court erred in concluding that the Illiterate Appellees' inability to read rendered them incapable of possessing adequate knowledge of the arbitration agreement they signed." *Bailey*, 364 F.3d 264.

While the distinction between *Lang* and *Bailey* is not entirely clear to this court, the fact remains that there is no evidence of fraud in the inducement of the arbitration agreement in this case which approaches that which was present in either *Lang* or *Bailey*. In this case, plaintiffs (who admittedly can read) merely assert that the arbitration provision which they signed was not explained to them at the real estate closing and that they were not verbally informed that they were giving up their right to a trial by jury. It is apparent, however, that plaintiffs would have realized exactly what rights they were giving up if they had bothered to read the provision in question, and their argument that there was fraud in the inducement of the arbitration agreement in this case lacks merit. While there may (or may not) have been fraud in the execution of the mortgage agreement as a whole, the existence of any such fraud is clearly a matter for the

5

arbitrator to consider, based upon *Prima Paint* and it progeny.

This court's rulings on the arbitration issues in this case are informed by its awareness of the Fifth Circuit's very strong policy in favor of arbitration. Plaintiffs appear to recognize the weight of the authority against them, as evidenced by their seemingly desperate arguments that arbitration should be banned outright as well as their arguments that this court should stay this case and permit discovery inquiries into whether the American Arbitration Association is biased in favor of GMFS and other similar defendants. The court finds plaintiffs' arguments in this regard to be unavailing, as are the remaining arguments which they raise. Plaintiffs indisputably signed an arbitration agreement in this case, and the court concludes that GMFS is entitled to enforce that agreement.

It is therefore ordered that GMFS' motion [11-1] to compel alternative dispute resolution and to enjoin the action pending in state court action is granted. The parallel state court action pending in the Circuit Court of Leflore County is hereby stayed, but only as to GMFS.[4] See 28 U.S.C. § 1651 (authorizing federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions.") Plaintiffs motion to stay [56-1] this court's consideration of the motion to compel ADR is denied.

SO ORDERED this 11th day of May, 2006.

       /s/ Michael P. Mills
       **UNITED STATES DISTRICT JUDGE**

---

[4]*Shelley v. The Mortgage Stop*, *et al.* No 2004-0126CICI. This court's sole authority to enjoin the state court action arises from the All Writs Act, and such authority is limited to that necessary to effectuate this court's order issued this date. GMFS is the only party which has sought to compel arbitration, and the court's order is accordingly limited to GMFS.